for being with us, albeit remotely. Mr. Hanson? Yes, good afternoon, Adam Hanson, on behalf of Appellant Krista Fischer. And may it please the court, I'd like to reserve three minutes for rebuttal. Sure. For 80 years, courts and parties have proceeded under a settled understanding that if a representative plaintiff making a claim under the FLSA serves process, and establishes personal jurisdiction, that any similarly situated plaintiffs wherever they may be found can opt into the case. The question here is whether the Supreme Court's 2017 decision in Bristol Myers changed all that, and in the process, ushered in a radical new era for representative and group litigation. It did not. Bristol Myers was not the revolution that defendants claim it was. It applied settled due process principles to the extraordinary facts before it. Those same settled principles dictate the outcome here. Once the named plaintiff serves process and establishes personal jurisdiction over the defendant, which all agree occurred, Congress has authorized similarly situated employees to opt into the action through 29 U.S.C. 216B, without any additional... Mr. Hanson, I understand your position, it's a radical, it's a sea change, but the Eighth Circuit and the Sixth Circuit have accepted that sea change, so to speak. How do you distinguish your position from those opinions? Well, we simply disagree with those opinions, Your Honor. You know, and I think that the entire argument here could probably be a response to that question. But let me start with Rule 4, which is where I was just headed. So the first problem for the employers and for FedEx in this case is with the text of Rule 4. The employers are trying to read Rule 4 to create a sort of extra textual categorical rule that requires the importation of state law, personal jurisdiction principles to all types of group litigation across all plaintiffs, across all claims, and across the entire lifespan of litigation. All types, excuse me, all types of litigation, class actions too? Certainly class actions. There's been a Seventh Circuit case, a D.C. Circuit case, and a Sixth Circuit case all addressing Bristol-Myers' application to class actions. Multidistrict litigation on down the line. This is a broad scale attack. And the problem for the defendants in these cases is that Rule 4 simply doesn't take them where they want to go. It doesn't say who must serve process. It doesn't say how personal jurisdiction is maintained in group litigation. And that makes sense because the answer is highly context specific. It would make no sense for Rule 4 to try to resolve this question for the dozens of types of group litigation that our rules and federal court system recognizes. Excuse me, doesn't it make sense to distinguish between class actions on the one hand and mass claims or mass actions on the other? The Bristol-Myers squibs involved the California state mass action. Why isn't the FLSA more like that than a class action? The majority in Canada thought that this was quite important. Yeah, so the distinction matters somewhat. But ultimately, our answer would be the same for both the FLSA and for Rule 23 class actions. Now, it would be different for a true mass action, like a mass tort case or what the California courts were considering in Bristol-Myers. So it's important to look at what the FLSA collective action mechanism is. And I do think the And this, this court has already addressed this question in Knepper. The FLSA collective action mechanism is actually a type of class action that the federal rules used to recognize, sometimes called a spurious class action. Unlike a mass action, it is still a representative action. The text of the FLSA makes that clear. The difference between the collective action and the modern version of Rule 23 is you need the consent of the representative parties, you need them to raise their hand and file a piece of paper with the court that says, I'm hitching my star to this named plaintiff's wagon, I will accept the judgment of this court. And what's most notable, Judge Sirica, about that history is that that spurious class action was created specifically to deal with these sorts of jurisdictional hurdles and jurisdictional morass. The cases we've cited in our brief reflect that. You could have different plaintiffs opting into a to a collective action or these now defunct spurious class actions that used to be more common. And the whole part, the whole purpose of this procedure was to allow these plaintiffs to gain the benefit or the loss if they lose but be bound by the judgment in the litigation, without those plaintiffs having to independently satisfy the prerequisites of federal jurisdiction. So that last part is really where I would pick the Sixth Circuit. But even Janet, but the Supreme Court in Genesis said that the FLSA was fundamentally different from the Rule 23 class actions and had different rules. And the opinions recite all the differences between the two. We don't quarrel with Genesis or that characterization at all. They are fundamentally different. But FLSA collective actions are also fundamentally different than than traditional mass tort actions like the type we saw in Bristol-Myers and or the type we see more frequently in federal MDLs. They still rely on representative proof. In a Bristol-Myers, for example, everyone has to prove their own claim with unique questions of causation and so forth. Presumably everyone would need to serve process. By contrast, here, there is a single employment policy, if successful, being challenged by the named plaintiff as a representative acting in a representative capacity. And anyone who wants to opt into the action will be bound by whatever judgment that named plaintiff ultimately receives. That part, while different from modern Rule 23, is also radically different from what we traditionally think of as a mass action. Collective actions are not simply mass actions. But it's it also there's an additional consideration, which is, these representative actions are no different than other types of representative actions recognized under the federal rules. We mentioned intervention, derivative litigate litigation, we've already talked about Rule 23 class actions, representative actions involving fiduciaries are another example. In all of these cases, the categorical rule that defendants are now allowed to do things would require looking at the relationship between all of these representative parties and the forum and the defendants forum context. And that's never been how any of this has worked. But that is, I think you started off aptly by saying, BMS worked some sort of revolution, whether it reached the shores of FLSA or not, is the question before us, right? But, but all of your answers to that question, right? I mean, there are there are, it would seem a couple of ways in which these this question can be resolved. One is to say, nothing happened in BMS that is relevant to the consideration of the FLSA. The other is to say something did a claim specific analysis that, you know, grounds, and perhaps either, either brings us back to a closer original understanding of the 14th Amendment or grounds our modern understanding, either way, something has shifted, but but fear not, because there still is ample, there's ample availability to write that, to write that course, if Congress chooses, or the court chooses to act under the Rules Enabling Act, we could have a new FLSA could have a new rule for both our proposals that have been discussed by commentators. And so why isn't the why isn't the careful and conscientious approach here to mind what BMS has said, use that to resolve what is now the open question that has been presented and let the remainder of change come from Congress's authority, direct or indirect? Well, I certainly agree with the sentiment that Congress and the rulemakers may want to take a look at this. But you won't be surprised to hear that I come at it from 180 degrees opposite the perspective that that you're postulating, right? I mean, there may be some need for courts to look at this, or for the rulemakers to examine how rule four works. But of course, we've got to do our best here with what we have now. And simply, mechanically importing the holding of Bristol Myers into the FLSA or beyond to rule 23 to MDL, and so forth, it is simply not warranted on the existence of current law for the Waters Court in the First Circuit decided it on on rule foregrounds. But there are, you know, the other differences are the ones that we've been highlighting, right? The use of this representative collective action mechanism is, of course, was absent in, in Bristol Myers. We have vastly different federalism concerns here. And federalism, I mean, I criticized the Sixth Circuit in my reply brief for ignoring federalism. But Bristol Myers identified federalism, not just as a background principle, but as a consideration that can be decisive. And so we need to look at how federalism principles, which were extraordinarily compelling in Bristol Myers, how those same federalism principles would obtain here. And the answer is 180 degrees different. I mean, we have a federal statute under federal law in federal court, where with a mechanism for representative litigation, and there's really no claim that a state is swooping in here to usurp anyone's authority. For 70 years, Congress has amended the FLA. And they haven't provided for universal jurisdiction on a nationwide basis. Is that relevant here? Yeah, it's a good question. And you know, the response basically boils down to a couple points. The first is, Congress didn't include a nationwide service of process provision in the Fair Labor Standards Act, because it never would have thought it had to. You have to remember, when Congress did this, we were in the Pennoyer era. So a case like this would have been really simple. You basically try to figure out if the defendant is present in Pennsylvania, it is. And then that remains true as to the additional opt-in plaintiffs. The other reason is this representative opt-in provision through an amendment to the FLA in 1947. And as I suggested earlier, the understanding of that opt-in provision was well settled at that point, that the opt-ins did not need to independently satisfy the prerequisites of personal jurisdiction. So I would say that nationwide service of process would be one way to solve the problem that defendants have claimed to identify. But this would have been a baffling idea to solve it through this other mechanism. Any other questions, Judge Mayne or Judge Sirica? Nothing further. Okay. I'm doing my best to keep track of my time, but I think I will reserve the rest of my time for rebuttal. All right. Thank you. Mr. Douglas. Good afternoon. May it please the Court. My name is Frederick Douglas, and I'm appearing on behalf of Federal Express Corporation. Plaintiff's counsel parades a series of horribles that may happen if this court follows Bristol-Myers. There was nothing radical about the 8-1 decision in Bristol-Myers. What plaintiff ignores in this case is one undisputable principle, and that is a nationwide collective action can be filed against Federal Express in the states of Delaware and Tennessee, our state of incorporation and our principal place of business. However, because plaintiffs in FLSA actions are plaintiffs who can obtain their own counsel, there are certain due process requirements that they have to follow. No plaintiff has the right to bring a based on jurisdiction and action in the state of Pennsylvania. No plaintiff who has absolutely no contacts with the state of Pennsylvania should be a party in an FLSA action. Here, the plaintiffs have options, and they're refusing to follow those options. There is no— Although, counsel, if I can just interject, I mean, perhaps they're not refusing to follow them. Perhaps they are simply stating that the due process clause does not require more than they have done. And your response, of course, is that Bristol teaches otherwise. But we would have to at least acknowledge that Bristol does not certainly reach this particular question. And so we are in somewhat of a predictive posture. Since we don't know yet what the territorial limits are on FLSA collective actions in state that we should be reaching for Bristol here to answer that unanswered question. Well, a couple of things about Bristol-Myers, and thank you for the question, Your Honor. Bristol-Myers observed that the plaintiff's concerns regarding mass litigation across the country are not founded because the plaintiffs in Bristol-Myers  in a place where Bristol-Myers was incorporated or in the place where Bristol-Myers had its principal place of business. But there are territorial limits, and those territorial limits were addressed by this court in the Max Datewiler case. The Third Circuit has spoken on this issue, and in that case, this circuit has said, in the absence of a federal statute authorizing nationwide service of process, federal courts are required to refer to the statute or rules of the states in which they sit. The court goes on to say, when a federal question case arises in a federal statute that is silent as to service of process, Rule 4 adopts an incorporative approach requiring that both assertion of jurisdiction and service of process be gauged by the state amenability standards. There is no dispute in this case that the FLSA does not have a nationwide service of process. There is no dispute in this case that opt-in plaintiffs have the same rights, privileges as the named plaintiff. There's no dispute. There is no dispute in this case that Rule 4 has some very critical language. In Rule 4, there's no dispute that Rule 4 has two requirements. First, appropriate service. Second, the jurisdictional requirement consistent with the 14th Amendment. And as the court is aware, because there is no nationwide service of process, the Fifth Amendment doesn't apply, but the 14th Amendment applies. Now, with respect to Rule 4, there are four things that are critical. First of all, as I indicated earlier, the FLSA does not authorize nationwide service. That's critical in the analysis. Second, the FLSA refers to... Mr. Douglas, let me jump in with a quick question for you. Would you take the same position if the Secretary of Labor was bringing this case? If the Secretary of Labor was bringing this case, your honor, I don't know what our position would be, but typically the Secretary of Labor would bring the action in Memphis, Tennessee, our principal place of business, or the state of Delaware. But in terms of where the Secretary of Labor would bring the action depends on the statute. The statute may have particular language related to the Secretary of Labor that does not apply to party plaintiffs in this case. You agree that the statute does authorize the action, correct? Yes, your honor, but as the court is aware, the Secretary of Labor is an arm, is a person of the federal government. The federal government can bring actions. The federal government has powers that individual plaintiffs do not have. An individual plaintiff with no connection in the state of Pennsylvania can't all of a sudden decide they want to participate or bring an action in the state of Pennsylvania with no appropriate jurisdiction. So the Secretary of Labor and the Department of Labor is very, very different than what we're dealing with in this case. Because they have nationwide reach. That's your position. No, no, I'm not suggesting that they have nationwide jurisdiction. What I'm suggesting is that the Secretary of Labor is a different party. It's a different animal. It's the federal government. Let me ask a different question. Assuming we adopt your interpretation of Rule 4K1A and the application of the 14th Amendment, would that necessitate a change in how courts in this circuit approach Rule 23 class actions? Absolutely not, your honor. Rule 23 class actions are very different than FLSA collective actions. FLSA collective actions have a different standard. Plaintiffs and FLSA actions are actually party plaintiffs. They have different rights. They can obtain their own counsel. There are different statutes of limitations. So adopting the Bristol-Myers and FLSA actions will not turn over the apple cart with respect to Rule 23 class actions. Would it cause any problems in the MDL context that you're aware of? Not that I'm aware of, your honor, just simply because as we've indicated in our brief, FLSA actions are very, very different. As the court is aware, under the FLSA, a party may bring a matter in a court of competent jurisdiction. The language in the FLSA is very different. It's very unique. Any changes to that language has to come from Congress as opposed to being written by counsel for FedEx or counsel for plaintiff or by the courts. Would it affect settlement in mass claims? That is, for many defendants in mass claims, the goal is to achieve insofar as possible global peace. Obviously, that's much harder to do in an opt-in action than it is in an opt-out action. But with that, assuming the defendant wants to settle the case, would it pose problems for that defendant or would they simply accept jurisdiction under those circumstances? Your honor, I don't think that would be a problem. I think that defendants would take a look at each particular claim and the similarly situated standard does have a requirement or there's certainly a lot of law that deals with when and under what circumstances are party plans considered similarly situated. They may not be similarly situated. One person may have experienced one particular action caused by, in this case, Federal Express and another person may have experienced a different action. So I think they're going to all be weighed individually. But if I may continue on with respect to Rule 4, under FLSA, as I indicated earlier, party plaintiffs, they're called party plaintiffs by the statute, by the FLSA. Rule 4K actually confers jurisdiction. Rule 4 actually talks about jurisdictions. Words such as establishes personal jurisdiction over the defendant. 4K2, personal jurisdiction. Jurisdiction in state courts. Jurisdiction consistent with the language. There is no doubt that Rule 4 has to be examined, has to be considered in determining whether or not, in this case, the district court in the Eastern District of Pennsylvania has jurisdiction. And now, if I just turn to the actions of the district court, there's a comment made that what the district court did in this case is somewhat shocking, is somewhat out of bounds. All the district court did, in this case, is follow the 8-1 Supreme Court's decision in Bristol-Myers. And here's what the district court concluded. That the FLSA does not That's not surprising. That is the law. The district court Mr. Douglas, the closing comment in the majority opinion in Bristol-Myers could be interpreted as limited to a state court action. I mean, they make it clear that we leave open the question whether the Fifth Amendment imposes the same restrictions by the federal courts. So, the council has taken the position that it was extreme for the court to clearly tethered on a state court case into the federal context. So, what do you make of that comment just before you get to the dissent? Sure. That comment is not surprising in Bristol-Myers because Bristol-Myers dealt with the state court action, obviously. There was no federal statute involved. And so, I'm not surprised by that comment. And as the court can appreciate, the U.S. Supreme Court tries to take a look at the principles relied on by the U.S. Supreme Court in Bristol-Myers, those principles are not shocking. Number one, one of the principles is that jurisdiction is for the benefit of the defendant. That's not shocking. Another principle, there's a difference between general jurisdiction and specific jurisdiction. That's not new. So, what the Supreme Court did in Bristol-Myers is not in fact what I would say is that what the court in Bristol-Myers simply did was restate basic jurisprudence regarding jurisdiction. And with respect to why Bristol-Myers should apply, the court in Bristol-Myers did a very detailed analysis on claims and did a detailed analysis on when claims should apply and those sorts of things. Those things are very, very helpful in resolving this issue. But, may I say this with respect to Bristol-Myers? May I say this with respect to this particular action? None of this would be of any importance if Congress would step in and amend the Fair Labor Standards Act. It's for Congress to do. Congress has a history of amending federal statutes to facilitate claims or defend the rights of claims. I know that there's one, I believe it was 1997 to 2007, the Lilly Ledbetter amendments. Congress did not like the statute of limitations that was imposed on Equal Pay Act claims. Congress stepped in. Congress can certainly step in. And one of the things that this court has observed in numerous opinions is that Congress knows how to amend statutes. And all we're saying is that apply the principles of due process, apply Bristol- Myers, and to the extent there needs to be any changes to the statute in question, the FLSA, that's a job for Congress. Unless there's any further questions. Thank you so very much. Judge Sirica, any further questions? No. Judge Mady? Nothing further. Thank you, Mr. Douglas. Thank you. A couple of points in reply. First on this business of suing in a court with general jurisdiction. This is still an extraordinary limitation on a plaintiff. This idea that a plaintiff might have to traipse across the country to bring an effective nationwide collective action. But the bigger problem, and if there's one thing from my experience I'd like to leave this court with, it's that this is really not possible in the real world in many, many cases, including potentially this one. And that's because not all similarly situated individuals necessarily have the same employer on their pay stub. Remember, the FLSA defines employer, and that's ultimately who we have to sue. Now, we've sued two defendants here. Despite this issue, we're still very early in the litigation. And so, as many courts have recognized, all it would take for an employer to defeat a nationwide collective action would be to simply incorporate a different subsidiary in every state. And you would end up with 50 collective actions, or more accurately, zero collective actions, because the economic burdens become so great that it's impossible to bring a case. Second, I want to address the argument about needing a mechanism for service. We agree. That's what the Supreme Court held in Omni. Courts can't create from whole cloth a mechanism of service that doesn't exist, but we have a mechanism of service here. It's Rule 4K1A. And there's never been a requirement or an understanding that the opt-in plaintiffs separately effectuate service. In fact, FedEx concedes this. Nobody, the Sixth Circuit concedes this. Nobody is saying that these opt-in plaintiffs need to actually serve anybody. It's the penumbras and emanations of service sort of requiring that the service somehow has to have some implication or some effectiveness as to them. And that's where the argument misses the mark. Briefly, with respect to Rule 23, I appreciate Mr. Douglas's position. I'm heartened by Mr. Douglas's position that his argument here doesn't affect Rule 23, but that hasn't been the position of Mr. Douglas' amici, including the Chamber of Commerce. They are pushing Bristol-Myers as far as it'll float, and that includes Rule 23. That includes MDLs. And frankly, the logic of the argument implicates those procedures. If we always have to look at every claim and every plaintiff, and as Mr. Douglas' brief said, this doctrine has no exceptions, then those mechanisms are going to be imperiled as well. Last, I would just say, you know, I'm going to make an appeal to fairness, and it's not just an open-ended appeal because fairness really is what undergirds the due process inquiry, right? We go back, we read all these cases from the Supreme Court about personal jurisdiction. It's all about fairness to the defendant, you know, the burden on the defendant, and the federalism of the states. And frankly, there's a good reason that no one thought of this argument for 80 years. It's just because this isn't remotely unfair. Asking FedEx to answer a federal lawsuit in federal court in Pennsylvania on a universal employment practice applicable to everyone in this position is not unfair. It's not remotely unfair, and it doesn't offend any federalism principles. So we've now reached a place, if we accept FedEx positions, where the ideas that undergird the doctrine have become completely divorced from what they claim the doctrine to be. Unless the court has further questions, I'd ask the court to reverse the district court's interlocutory order and remand accordingly. Thank you very much. Judge Meadey, Judge Sirica, any other questions? Nothing. Thank you, Mr. Hampson. Thank you, Mr. Douglas. Thank you, Your Honor. We'll take this case under advisement. Have a good day, Your Honor.